UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| PLEASANT VALLEY BIOFUELS, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>QUEST CAPITAL FINANCE, INC., d/b/a QUEST CORPORATION, d/b/a QUEST CAPITAL INVESTMENTS, INC. and SANCHEZ-MEDINA, GONZALEZ, QUESADA, LAGE, CRESPO & GOMEZ, LLP,<br><br>    Defendants. | Civil No. 12-CV-00229-REB<br><br>MEMORANDUM DECISION AND ORDER RE:<br><br>DEFENDANT SANCHEZ-MEDINA'S MOTION TO DISMISS<br>(Docket No. 10) |

Currently pending before the Court is Defendant Sanchez-Medina, Gonzalez, Quesada, Lage, Crespo, & Gomez LLP's ("Sanchez-Medina") Motion to Dismiss (Docket No. 10). Having carefully reviewed the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## BACKGROUND[1]

1. In 2011, Pleasant Valley sought financing to be used for working capital. *See* Compl. at ¶ 7 (Docket No. 1). Pleasant Valley and Defendant Quest Capital Finance, Inc., d/b/a Quest Corporation, d/b/a Quest Capital Investments, Inc. ("Quest") engaged in discussions regarding such financing. *See id.*

---

[1] For the purposes of Sanchez-Medina's Motion to Dismiss only, this "Background" section accepts the allegations raised in Plaintiff Pleasant Valley Biofuels, LLC's ("Pleasant Valley) Complaint as true.

**MEMORANDUM DECISION AND ORDER - 1**

2. On September 2, 2011, Quest issued a Letter of Intent to Pleasant Valley, setting forth the details of a proposed financing package for $7,000,000.00. *See id.* at ¶ 8. The Letter of Intent required that, in order for the transaction to proceed, Quest had to provide Pleasant Valley with an acceptable final commitment letter and a mutually-agreed-upon escrow agreement; otherwise, the Letter of Intent could be cancelled and the parties would have no further obligations. *See id.* at ¶ 9.

3. As part of the loan transaction and in order to obtain a loan, Pleasant Valley was required to make a down payment of 4% of the loan – $280,000.00 (the "Deposit"). *See id.* at ¶ 10. Accordingly, an escrow agent was needed to hold the Deposit to ensure that Quest fulfilled all obligations under the proposed loan transaction before receiving the Deposit. *See id.*

4. Pursuant to the Letter of Intent, Quest arranged for Defendant Sanchez-Medina (a Florida law firm) to serve as the escrow agent for this transaction. *See id.* at ¶ 11. Pleasant Valley, Quest, and Sanchez-Medina executed an escrow agreement, dated August 31, 2011. *See id.*[2]

5. Pursuant to the parties' escrow agreement, Pleasant Valley agreed to transfer the Deposit to Sanchez-Medina within 48 hours after all the parties signed the escrow agreement. *See id.* at ¶ 12. Pleasant Valley forwarded the Deposit accordingly. *See id.*

6. Pursuant to the parties' escrow agreement, before Sanchez-Medina could disburse the Deposit to Quest, a number of conditions (the "preconditions") needed to be satisfied. *See id.* at ¶¶ 13 & 13(a)-(d). To this end, the escrow agreement also required Quest to issue a

---

[2] Though not material to the Court's resolution of Sanchez-Medina's Motion to Dismiss, the Court was puzzled that the August 31, 2011 escrow agreement (signed by Pleasant Valley, Quest, and Sanchez-Medina) predates the September 2, 2011 Letter of Intent.

**MEMORANDUM DECISION AND ORDER - 2**

"written confirmation . . . that each of the [preconditions] . . . ha[s] been satisfied" (the "Commitment Letter").  *See id*. at ¶ 14.  Sanchez-Medina was only authorized to release the Deposit to Quest once Sanchez-Medina received the Commitment Letter, signed by both Pleasant Valley and Quest.  *See id*. at ¶ 15.

       7.      On September 13, 2011, Quest issued a purported Commitment Letter to Pleasant Valley.  *See id*. at ¶ 16.  The September 13, 2011 Commitment Letter was signed by Pleasant Valley and Quest, and a copy was provided to Sanchez-Medina.  *See id*.  The September 13, 2011 Commitment Letter, however, did not contain any of the preconditions and was not intended by Pleasant Valley to serve as an authorization to Sanchez-Medina to disburse the Deposit to Quest.  *See id*. at ¶ 17 & 17(e)-(h).  Indeed, as of September 13, 2011, none of the preconditions had been satisfied and, to date, remain unsatisfied.  *See id*. at ¶ 18.

       8.      Without Pleasant Valley's knowledge or consent, and without receiving proper written confirmation that all of the preconditions were met, Sanchez-Medina disbursed the Deposit to Quest.  *See id*. at ¶ 19.  In releasing the deposit to Quest, Sanchez-Medina claims that they relied upon the September 13, 2011 Commitment Letter.  *See id*. at ¶ 20.

       9.      Pursuant to the terms of the September 13, 2011 Commitment Letter, Quest was under an obligation to close on the loan no later than November 30, 2011.  *See id*. at ¶¶ 21-22.  Despite being in receipt of the Deposit, however, Quest failed to perform and did not close on the loan.  *See id*. at ¶¶ 21-24.

      10.     Because Pleasant Valley already paid out $280,000.00 without Quest providing the agreed-upon $7,000,000 in financing, on January 9, 2012 and February 8, 2012, Pleasant Valley requested from Quest and Sanchez-Medina that the Deposit be returned.  *See id*. at ¶ 25.

**MEMORANDUM DECISION AND ORDER - 3**

11. In a February 8, 2012 letter, Pleasant Valley demanded that Sanchez-Medina return the Deposit because Sanchez-Medina never received written confirmation that the preconditions had been satisfied. *See id.* at ¶¶ 30-31.

12. On February 9, 2012, Pleasant Valley demanded that Quest return the Deposit. *See id.* at ¶ 33.

13. To date, Quest has not cured its default, the loan is not closed, and the Deposit has not been returned. *See id.* at ¶ 28 & 32.

## DISCUSSION

Pleasant Valley asserts seven causes of action: (1) breach of the September 13, 2011 Commitment Letter against Quest; (2) breach of the implied covenant of good faith and fair dealing against Quest and Sanchez-Medina; (3) misrepresentation against Quest and Sanchez-Medina; (4) promissory estoppel against Quest and Sanchez-Medina; (5) unjust enrichment against Quest and Sanchez-Medina; (6) breach of the escrow agreement against Sanchez-Medina; and (7) breach of fiduciary duty/gross negligence against Sanchez-Medina. *See id.* at ¶¶ 35-66. Independent of the substantive arguments lodged against it, Sanchez-Medina moves to dismiss this action for lack of personal jurisdiction and improper venue.

**I.     The Law of Personal Jurisdiction**

In response to a motion to dismiss under FRCP 12(b)(2), the plaintiff bears the burden of proving that jurisdiction is appropriate. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Nonetheless, where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only establish a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *See Balard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

**MEMORANDUM DECISION AND ORDER - 4**

Hence, the Court must take the plaintiff's uncontroverted allegations as true and conflicts between the parties over statements in affidavits are resolved in the plaintiff's favor. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

There is no applicable federal statute governing personal jurisdiction. Rather, the law of the state in which the federal district court sits applies. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). However, because Idaho's long-arm statute, codified in Idaho Code § 5-514, has been interpreted to purportedly allow a broader application of personal jurisdiction than the Due Process Clause might otherwise allow, this Court need look only to the Due Process Clause to determine personal jurisdiction. *See Wells Cargo, Inc. v. Transp. Ins. Co.*, 2009 WL 4907026, *2 (D. Idaho 2009).[3] Thus, under Idaho law, the jurisdictional analysis and federal due process analysis are the same. *See id.*

The exercise of personal jurisdiction over a defendant comports with federal due process if the defendant "has certain minimum contacts with the relevant forum such that maintenance of

---

[3] In *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987), the Ninth Circuit determined that the Idaho legislature, in adopting Idaho Code § 5-514, "intended to exercise all the jurisdiction available to the State of Idaho under the Due Process Clause of the United States Constitution." *Lake*, 817 F.2d at 1420. The Idaho Supreme Court had so held, and continued to so hold for a few years after the *Lake* decision was rendered. *See Houghland Farms, Inc. v. Johnson*, 803 P.3d 978 (Idaho 1990). More recently, however, the Idaho Supreme Court has, without commenting on this precedent, instituted a two-part test for resolving long-arm jurisdiction questions. The Court first looks at whether the defendant's conduct falls within the terms of the statute, and then looks to see whether exercising jurisdiction would comport with the Due Process Clause. In two cases, the Idaho Supreme Court has held that the defendant's conduct did fall within Idaho Code § 5-514, but that jurisdiction could not be exercised consistently with the Due Process Clause. *See, e.g.*, *Smalley v. Kaiser*, 950 P.2d 1248 (Idaho 1997); *Saint Alphonsus Reg'l Med. Ctr. v. Washington*, 852 P.2d 491 (Idaho 1993). These decisions imply that Idaho Code § 5-514 reaches beyond the limits of due process, and that the Idaho Supreme Court must use the Due Process Clause to rein in the statute's grasp. Thus, the interpretation of Idaho Code § 5-514 in *Lake* appears no longer accurate. The result, however, is the same – the Due Process Clause sets the limit, but the Idaho Supreme Court's two-part test recognizes that the reach of the statute is not identical with the reach of the Due Process Clause.

**MEMORANDUM DECISION AND ORDER - 5**

the suit does not offend traditional notions of fair play and substantial justice." *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). Sufficient minimum contacts can result in either general or specific jurisdiction. *See Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). General jurisdiction exists where the defendant's activities in the forum "are substantial, continuous and systematic," while specific jurisdiction applies if a defendant's "less substantial contacts with the forum give rise to the cause of action before the court." *See id*. Here, Pleasant Valley admits that no general jurisdiction exists over Sanchez-Medina. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss, p. 8 (Docket No. 17). Thus, if personal jurisdiction exists as to Sanchez-Medina, it must be in the form of specific jurisdiction.

> The Ninth Circuit analyzes specific jurisdiction using a three-prong test:
>
> 1. The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> 2. The claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> 3. The exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*See Yahoo!*, 433 F.3d at 1205-06 (quoting *Schwarzenegger*, 374 F.3d at 802). Pleasant Valley bears the burden of satisfying the first two prongs of this tripartite test. *See Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). If Pleasant Valley succeeds in satisfying both of the first two prongs, the burden then shifts to Sanchez-Medina to "present a compelling case" that the

**MEMORANDUM DECISION AND ORDER - 6**

exercise of jurisdiction would not be reasonable." *See id*. (quoting *Schwarzenegger*, 374 F.3d at 802).

      A.      <u>Purposeful Availment or Direction</u>

The first requirement of "purposeful availment" or "purposeful direction" ensures that a defendant is not haled into court because of random, fortuitous or attenuated contacts or based upon unilateral contacts of third parties. *See Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985). Purposeful availment and purposeful direction, although often used interchangeably, apply to two different situations, particularly in the Ninth Circuit, with the purposeful availment analysis applying in contract cases and the purposeful direction analysis being used in tort cases. *See Schwarzenegger*, 374 F.3d at 802.

Jurisdiction premised upon purposeful availment requires a finding that the defendant has performed some affirmative conduct, such as executing or performing a contract, which allows or promotes the transaction of business in the forum. *See id*.; *see also Doe*, 248 F.3d at 924. However, an individual's *contract* with a non-resident defendant alone does not automatically establish sufficient minimum *contacts* to establish personal jurisdiction. *See id*. In *Doe*, the Ninth Circuit noted that prior negotiations, contemplated future consequences, terms of the contract, and the parties' course of dealings must all be evaluated. *See id*.

Jurisdiction premised upon purposeful direction requires a finding that the defendant's actions outside the forum state are directed at the forum, such as distribution in the forum state of goods originating elsewhere. *See Schwarzenegger*, 374 F.3d at 803. In *Dole*, the Ninth Circuit applied the "effects" test for assessing personal jurisdiction in intentional tort cases. *See Dole*, 303 F.3d at 1111. This test requires that the defendant allegedly have (1) committed an

**MEMORANDUM DECISION AND ORDER - 7**

intentional act, (2) expressly aimed at the forum state, and (3) caused harm that the defendant knew was likely to be suffered in the forum state.  *See id.*

      B.    <u>Relatedness</u>

The second requirement for specific jurisdiction is that the contacts constituting purposeful availment or direction are those that give rise to the lawsuit.  *See Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).  This is measured as "but for" causation; that is, personal jurisdiction is only proper where "but for" the defendant's activities in the forum, the plaintiff's injuries would not have occurred.  *See id.*

      C.    <u>Reasonableness</u>

The third and final requirement shifts the burden to the defendant to contest whether the exercise of personal jurisdiction is reasonable and comports with the notions of fair play and substantial justice.  *See id.*  The reasonableness determination requires a court to look at seven factors: (1) the extent of the defendant's purposeful injection into the forum state; (2) the burden on the defendant in defending the forum; (3) the extent of the conflict with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  *See id.*

**II.**    **Applying Personal Jurisdiction Standards to Sanchez-Medina**

In opposing Sanchez-Medina's Motion to Dismiss, Pleasant Valley focuses upon its connections with Idaho – namely, that Pleasant Valley is an Idaho company; that Pleasant Valley does business solely in Idaho; that all of Pleasant Valley's operating facilities are in Idaho; that all of Pleasant Valley's employees live and work in Idaho; that the escrow agreement identifies

**MEMORANDUM DECISION AND ORDER - 8**

Pleasant Valley as an Idaho business existing under the laws of Idaho and located in American Falls, Idaho; that Pleasant Valley signed the escrow agreement in Idaho; that Pleasant Valley transferred the Deposit from Idaho to Sanchez-Medina; and that the September 13, 2011 Commitment Letter repeatedly notes that Pleasant Valley is located in Idaho, and that the loan proceeds are to be used for working capital for purposes of biofuel production located in Idaho or at Idaho facilities. *See* Worton Decl. at ¶¶ 5, 12-14 & 16 (Docket No. 17, Att. 1). However, this recitation misses the point when analyzing whether this Court can exercise personal jurisdiction over Sanchez-Medina, not Pleasant Valley.

With this query in mind, Pleasant Valley admits that it never sought out Sanchez-Medina; instead, it was Quest (a Nevada corporation) who hired Sanchez-Medina (a Florida law firm). *See id*. at ¶ 9. Pleasant Valley proffers no evidence that Sanchez-Medina ever solicited business in Idaho or that Sanchez-Medina has clients in Idaho. *See* Sanchez-Medina Aff. at ¶ 6 (Docket No. 10, Att. 2). Based upon the record, Sanchez-Medina's only connection to Idaho is that it acted as an escrow agent for a financial transaction between Idaho and Nevada residents and, relatedly, held an Idaho resident's (Pleasant Valley) money (the Deposit) in escrow (albeit in Florida) until disbursing those funds to a Nevada resident (Quest). These are the only allegations that touch upon Idaho, a very limited list consistent with the fact that the entire arrangement came into existence without any actual negotiations or communications between Pleasant Valley and Sanchez-Medina. *See, e.g.*, Worton Decl. at ¶ 11 (Docket No. 17, Att. 1) ("Pleasant Valley first learned that Sanchez-Medina would be involved in "escrow" when Quest sent Pleasant Valley the financing documents, including the escrow agreement, which states that Sanchez-Medina would act as the escrow agent."). Simply put, such contacts are more than just

**MEMORANDUM DECISION AND ORDER - 9**

fleeting, they are almost non-existent, and as such are not enough to confer jurisdiction, regardless of the substantive merits of Pleasant Valley's claims against Sanchez-Medina.

Even when the facts are viewed favorably towards Pleasant Valley as the non-movant, the at-issue escrow agreement was a single contract between Pleasant Valley, Quest, and Sanchez-Medina that is insufficient to establish Sanchez-Medina's purposeful availment to Idaho's benefits and protections. *See Boschetto*, 539 F.3d at 1016 (finding that "one-shot" contract that did not involve any continuing commitments by the defendants in the forum state did not establish purposeful availment); *Doe*, 248 F.3d at 924 (individual's contract with non-resident defendant alone cannot automatically establish minimum contacts). The evidence does not show that Sanchez-Medina reached out to Pleasant Valley in Idaho and purposefully availed or directed its actions to Idaho and, likewise, Pleasant Valley cannot establish that, but for Sanchez-Medina's actions in Idaho, these claims would not have arisen.

Because Pleasant Valley has not met its burden, it cannot be said that this Court has personal jurisdiction over Sanchez-Medina. Therefore, Sanchez-Medina's Motion to Dismiss is granted.[4]

///

///

///

///

///

---

[4] Without personal jurisdiction, there is no need to address Sanchez-Medina's alternate argument that Idaho is an improper venue for this action.

**MEMORANDUM DECISION AND ORDER - 10**

## **ORDER**

Based on the foregoing, IT IS HEREBY ORDERED THAT Sanchez-Medina's Motion to Dismiss (Docket No. 10) is GRANTED.



DATED:  **December 6, 2012**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 11**