# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| PLEASANT VALLEY BIOFUELS, LLC, | Civil No. 12-CV-00229-REB |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE:** |
| vs. | |
| QUEST CAPITAL FINANCE, INC., d/b/a QUEST CORPORATION, d/b/a QUEST CAPITAL INVESTMENTS, INC. and SANCHEZ-MEDINA, GONZALEZ, QUESADA, LAGE, CRESPO & GOMEZ, LLP, | **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST QUEST CAPITAL FINANCE** |
| | **(Docket No. 24)** |
| Defendants. | **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST QUEST CAPITAL INVESTMENTS** |
| | **(Docket No. 25)** |

Now pending before the Court are Plaintiff's (1) Motion for Default Judgment Against Quest Capital Finance (Docket No. 24), and (2) Motion for Default Judgment Against Quest Capital Investments (Docket No. 25). Having carefully considered the record and otherwise being fully advised, the undersigned enters the following Memorandum Decision and Order:

## I. BACKGROUND[1]

**A.    Factual Background**

1.    In 2011, Pleasant Valley sought financing to be used for working capital. *See* Compl. at ¶ 7 (Docket No. 1). Pleasant Valley and Defendant Quest Capital Finance, Inc., d/b/a

---

[1] For the purposes of the at-issue Motions only, this "Background" section accepts the allegations raised in Plaintiff Pleasant Valley Biofuels, LLC's ("Pleasant Valley) Complaint as true.

**MEMORANDUM DECISION AND ORDER - 1**

Quest Corporation, d/b/a Quest Capital Investments, Inc. (collectively "Quest") engaged in discussions regarding such financing.  *See id.*

2.       On September 2, 2011, Quest issued a Letter of Intent to Pleasant Valley, setting forth the details of a proposed financing package for $7,000,000.00.  *See id.* at ¶ 8.  The Letter of Intent required that, in order for the transaction to proceed, Quest had to provide Pleasant Valley with an acceptable final commitment letter and a mutually-agreed-upon escrow agreement; otherwise, the Letter of Intent could be cancelled and the parties would have no further obligations.  *See id.* at ¶ 9.

3.       As part of the loan transaction and in order to obtain a loan, Pleasant Valley was required to make a down payment of 4% of the loan – $280,000.00 (the "Deposit").  *See id.* at ¶ 10.  Accordingly, an escrow agent was needed to hold the Deposit to ensure that Quest fulfilled all obligations under the proposed loan transaction before receiving the Deposit.  *See id.*

4.       Pursuant to the Letter of Intent, Quest arranged for Defendant Sanchez-Medina (a Florida law firm) to serve as the escrow agent for this transaction.  *See id.* at ¶ 11.  Pleasant Valley, Quest, and Sanchez-Medina executed an escrow agreement, dated August 31, 2011.  *See id.*[2]

5.       Pursuant to the parties' escrow agreement, Pleasant Valley agreed to transfer the Deposit to Sanchez-Medina within 48 hours after all the parties signed the escrow agreement. *See id.* at ¶ 12.  Pleasant Valley forwarded the Deposit accordingly.  *See id.*

---

[2]  Though not necessarily material to the Court's resolution of the at-issue Motions, the Court was puzzled that the August 31, 2011 escrow agreement (signed by Pleasant Valley, Quest, and Sanchez-Medina) predates the September 2, 2011 Letter of Intent.

**MEMORANDUM DECISION AND ORDER - 2**

6.      Pursuant to the parties' escrow agreement, before Sanchez-Medina could disburse the Deposit to Quest, a number of conditions (the "preconditions") needed to be satisfied.  *See id*. at ¶¶ 13 & 13(a)-(d).  To this end, the escrow agreement also required Quest to issue a "written confirmation . . . that each of the [preconditions] . . . ha[s] been satisfied" (the "Commitment Letter").  *See id*. at ¶ 14.  Sanchez-Medina was only authorized to release the Deposit to Quest once Sanchez-Medina received the Commitment Letter, signed by both Pleasant Valley and Quest.  *See id*. at ¶ 15.

7.      On September 13, 2011, Quest issued a purported Commitment Letter to Pleasant Valley.  *See id*. at ¶ 16.  The September 13, 2011 Commitment Letter was signed by Pleasant Valley and Quest, and a copy was provided to Sanchez-Medina.  *See id*.  The September 13, 2011 Commitment Letter, however, did not contain any of the preconditions and was not intended by Pleasant Valley to serve as an authorization to Sanchez-Medina to disburse the Deposit to Quest.  *See id*. at ¶ 17 & 17(e)-(h).  Indeed, as of September 13, 2011, none of the preconditions had been satisfied and, to date, remain unsatisfied.  *See id*. at ¶ 18.

8.      Without Pleasant Valley's knowledge or consent, and without receiving proper written confirmation that all of the preconditions were met, Sanchez-Medina disbursed the Deposit to Quest.  *See id*. at ¶ 19.  In releasing the deposit to Quest, Sanchez-Medina claims that they relied upon the September 13, 2011 Commitment Letter.  *See id*. at ¶ 20.

9.      Pursuant to the terms of the September 13, 2011 Commitment Letter, Quest was under an obligation to close on the loan no later than November 30, 2011.  *See id*. at ¶¶ 21-22.  Despite being in receipt of the Deposit, however, Quest failed to perform and did not close on the loan.  *See id*. at ¶¶ 21-24.

**MEMORANDUM DECISION AND ORDER - 3**

10.     Because Pleasant Valley already paid out $280,000.00 without Quest providing

the agreed-upon $7,000,000 in financing, on January 9, 2012 and February 8, 2012, Pleasant

Valley requested from Quest and Sanchez-Medina that the Deposit be returned.  *See id*. at ¶ 25.

11.     In a February 8, 2012 letter, Pleasant Valley demanded that Sanchez-Medina

return the Deposit because Sanchez-Medina never received written confirmation that the

preconditions had been satisfied.  *See id*. at ¶¶ 30-31.

12.     On February 9, 2012, Pleasant Valley demanded that Quest return the Deposit.

*See id*. at ¶ 33.

13.     To date, Quest has not cured its default, the loan is not closed, and the Deposit

has not been returned.  *See id*. at ¶ 28 & 32.

**B.     Procedural Background**

14.     On May 14, 2012, Pleasant Valley brought the instant action, asserting seven

causes of action: (1) breach of the September 13, 2011 Commitment Letter against Quest; (2)

breach of the implied covenant of good faith and fair dealing against Quest and Sanchez-Medina;

(3) misrepresentation against Quest and Sanchez-Medina; (4) promissory estoppel against Quest

and Sanchez-Medina; (5) unjust enrichment against Quest and Sanchez-Medina; (6) breach of

the escrow agreement against Sanchez-Medina; and (7) breach of fiduciary duty/gross

negligence against Sanchez-Medina.  *See id*. at ¶¶ 35-66.

15.     On July 18, 2012, Pleasant Valley moved for entry of default against Quest

Capital Finance, Inc. and Quest Capital Investments, Inc., claiming that each of them "failed to

file an Answer or other required pleading" and "has not taken any action or filed any document

that indicates [their] intent to defend the suit.  *See* Reqs. for Entry of Default (Docket Nos. 8 &

**MEMORANDUM DECISION AND ORDER - 4**

9); *see also* Sasser Affs. (Docket Nos. 8, Att. 1 & 9, Att. 1).  While requesting entry of default against Quest Capital Finance, Inc. and Quest Capital Investments, Inc. on July 18, 2012, Pleasant Valley did not request entry of default against Quest Corporation; instead, Pleasant Valley submitted an "Affidavit for Entry of Default" relating to Quest Corporation on August 22, 2012.  *See* Sasser Aff. (Docket No. 13).

16.     On August 15, 2012, Sanchez-Medina moved to dismiss Pleasant Valley's claims against it for lack of personal jurisdiction and improper venue.  *See* Mot. to Dismiss (Docket No. 10).

17.     On October 30, 2012, the Clerk of the Court entered default against Quest Capital Finance, Inc. and Quest Capital Investments, Inc.  *See* Clerk's Entry of Default (Docket No. 21).

18.     On November 7, 2012, Pleasant Valley filed affidavits in support of default judgments against Quest Capital Finance, Inc. and Quest Capital Investments, Inc.  *See* Sasser Affs. (Docket Nos. 22 & 23).  On November 14, 2012, Pleasant Valley filed the corresponding, at-issue motions for default judgments against Quest Capital Finance, Inc. And Quest Capital Investments, Inc.  *See* Mots. for Default J.'s (Docket Nos. 24 & 25).

19.     On December 6, 2012, the undersigned granted Sanchez-Medina's motion to dismiss.  *See* 12/06/12 MDO (Docket No. 27).

## II. <u>DISCUSSION</u>

Where a party against whom judgment is sought has failed to plead or otherwise defend, the party seeking relief must first secure an entry of default, and then may apply to the court for default judgment.  *See* Fed. R. Civ. P. 55.  Where a party is in default, "the factual allegations of the complaint, except those relating to the actual amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  Unless a claim is for a

**MEMORANDUM DECISION AND ORDER - 5**

"sum certain," a court must consider proof of damages before entering final judgment.  *See* Fed.

R. Civ. P. 55(b)(1).

Here, Pleasant Valley's Complaint repeatedly references its $280,000.00 transfer to

Sanchez-Medina pursuant to the parties' escrow agreement.  *See supra*.  Moreover, Pleasant

Valley's counsel's affidavits in support of the at-issue Motions similarly reference the same

amount (in addition to other allegedly-recoverable amounts), stating in full:

> Defendant is indebted to Plaintiff in the following amounts: (1)
> $280,000.00 in principal indebtedness; (2) further interest to accrue
> after, at the daily statutory rate until judgment is entered; and (3)
> post-judgment interest on the amount of judgment until fully and
> finally paid and/or satisfied.

*See* Sasser Affs. at ¶ 4 (Docket Nos. 22 & 23).  However, the Court is unsure whether these

references – consistent as they may be – state a claim for a "sum certain" within the meaning of

FRCP 55(b)(1).  Simply because Pleasant Valley's counsel may be sure of the $280,000.00 sum

does not make its damage claim a "sum certain" under the Rule.  *See* Schwarzer, Tashima &

Wagstaffe, *Rutter Group Prac. Guide: Fed. Civ. Pro. Before Trial*, § 6:54 (The Rutter Group

2011) ("This is a high standard.  'In the Rule 55 context, a claim is not a sum certain unless there

is *no doubt* as to the amount to which a plaintiff is entitled as a result of the defendant's

default.'") (quoting *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003)

(emphasis in original)); *see also KPS*, 318 F.3d at 20, n.9 ("Neither the fact that the complaint

identifies a purported aggregate total, nor the fact that the affidavit attests to such a sum,

automatically converts KPS's claim into a 'sum certain.'").

Simply put, Pleasant Valley's Complaint and Pleasant Valley's counsel's affidavits

stating that Quest Capital Finance, Inc. and Quest Capital Investments, Inc. owes Pleasant Valley

**MEMORANDUM DECISION AND ORDER - 6**

$280,000.00, without more, is not enough.  *See CSXT Intermodal, Inc. v. Mercury Cartage, LLC*, 271 F.R.D. 400, 402 (D. Maine 2010) ("CSXT merely provided the Court with an affidavit from an employee stating that Mercury Cartage owes CSXT $273,335.00, and no documentation to corroborate the affiant's say-so.  An employee's assurance, devoid of proper documentation, is insufficient evidence that a plaintiff is entitled to a default judgment for a 'sum certain' under Rule 55(b)(1).").  Instead, an affidavit from a knowledgeable Pleasant Valley representative (rather than Pleasant Valley's counsel), providing the evidentiary foundation for any attached documentation speaking to the $280,000.00 in damages, would assist the Court in considering an argument that (1)  a "sum certain" is actually involved and, likewise, (2) entering a default judgment.[3]

Therefore, given the undersigned's inability to conclude that a "sum certain" is involved here, Plaintiff's (1) Motion for Default Judgment Against Quest Capital Finance (Docket No. 24), and (2) Motion for Default Judgment Against Quest Capital Investments (Docket No. 25) are denied without prejudice.[4]

---

[3]  Pleasant Valley references FRCP 55(b)(2) in support of its Motions.  *See* Mots. for Default J.'s, p. 1 (Docket Nos. 24 & 25).  While FRCP 55(b)(2) relates to the entry of a default judgment by the Court (rather than by the Clerk of the Court under FRCP 55(b)(1)), Pleasant Valley asked either the Court or the Clerk of the Court to enter default judgments here.  *See id.* Any distinction in the two Rules is immaterial vis à vis the need to definitively determine the amount of damages.  *See KPS*, 318 F.3d at 19-20, n.8 ("[T]he phrase 'sum certain' only appears in FRCP 55(b)(1), applicably only 'if the defendant has been defaulted for failure to appear.' Nevertheless, the concept of a 'sum certain' is relevant to the question under FRCP 55(b)(2) of whether a further evidentiary inquiry is necessary before the determination of damages.").

[4]  In renewing any such motion(s) for entry of default judgment, Pleasant Valley may wish to revisit whether Quest Corporation should be incorporated into any entry of default (*see supra*) and, also, whether Quest Corporation should be the subject of any future motion for default judgment.  Additionally, the Court notes that, within Pleasant Valley's at-issue Motions, it requests $280,000.00 in damages (and $1,500.00 in attorneys' fees) in each such motion;

**MEMORANDUM DECISION AND ORDER - 7**

## III.  ORDER

For the foregoing reasons, IT IS HEREBY ORDERED THAT Plaintiff's (1) Motion for

Default Judgment Against Quest Capital Finance (Docket No. 24), and (2) Motion for Default

Judgment Against Quest Capital Investments (Docket No. 25) are DENIED without prejudice.

DATED:  **April 29, 2013**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

---

Pleasant Valley is advised to address this potential "double-recovery" in any future motion for
default judgment.

**MEMORANDUM DECISION AND ORDER - 8**